1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN DEE STEPHENSON,<br><br>Petitioner,<br><br>v.<br><br>CALIFORNIA DEPARTMENT OF<br>CORRECTIONS, et al.,<br><br>Respondent. | No. 1:18-cv-00724-DAD-SKO (HC)<br><br><br>**FINDINGS AND RECOMMENDATION<br>THAT THE COURT DENY PETITION<br>FOR WRIT OF HABEAS CORPUS**<br><br>**(Doc. 10)** |

Petitioner, Alan Dee Stephenson, is a state prisoner proceeding *pro se* with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner presents three grounds for habeas relief: (1) insufficient evidence; (2) the trial court improperly failed to strike a previous felony conviction; and (3) the imposition of multiple life sentences violates the prohibition against cruel and unusual punishment. The Court referred the matter to the Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1) and Local Rules 302 and 304. Having reviewed the record and applicable law, the undersigned recommends that the Court deny habeas relief.

## I.     Procedural and Factual Background[1]

Petitioner was charged with molesting his daughter, J., and his stepdaughter, H.  The victims have the same mother, who married Petitioner in 2003.  J. was born in 1997 and H. was born in 1999.

The family moved numerous times between 2003 to 2011.  Because the locations and time periods of the family's residences are significant to Petitioner's arguments in his petition, the Court will recount the evidence established at trial.  From 2003 until July 2006, J., H., their mother, and Petitioner lived together in Fresno.  They then moved to Clovis for a month or two.  Later in 2006, J., H., and their mother moved to Colorado, but Petitioner did not move with them.  Petitioner remained in California and lived for at least part of the time with his brother in San Diego.  At some point while they were residing in Colorado, J., H., and their mother visited San Diego.  During the visit, J. and H. stayed with Petitioner at his brother's house.

J. and H. moved back to Fresno in August 2008 and lived with their maternal aunt.  Petitioner did not live with the girls but had access to them.  Their mother remained in Colorado until January 2009, when she moved back in with the girls and her sister in Fresno.

In June 2009, J., H., their mother, and aunt, moved to a single-story house in Fresno.  Approximately two months later, Petitioner moved in with them.  In June 2010, J., H., their mother, and Petitioner moved to a two-story house with a partially furnished garage in Fresno.  In July 2011, the four moved to Arizona, but returned to Clovis in September 2011.

Petitioner was arrested in October 2011, after J. told her mother that Petitioner was abusing her and H.

---

[1] The factual background, taken from the opinion of the California Court of Appeal, Fifth Appellate District, *People v. Stephenson*, F11906121 (Cal. Ct. App. Mar. 21, 2017), is presumed to be correct.  28 U.S.C. § 2254(e)(1).

The district attorney charged Petitioner with 14 counts, which are presented in the following table:

| Count | Offense | Victim | Dates | Place or Other Specification |
|---|---|---|---|---|
| 1 | Sexual intercourse or sodomy with a child under 10 years old or younger | J. | September 20, 2006 – December 21, 2008 | |
| 2 | Lewd act upon a child under 14 | J. | December 22, 2008 – October 16, 2011 | "Garage" |
| 3 | Lewd act upon a child under 14 | J. | December 22, 2008 – October 16, 2011 | "Living room" |
| 4 | Lewd act upon a child under 14 | J. | December 22, 2008 – October 16, 2011 | "Her bedroom" |
| 5 | Lewd act upon a child under 14 | J. | December 22, 2008 – October 16, 2011 | "Parent's bedroom" |
| 6 | Sexual intercourse or sodomy with a child 10 years old or younger | H. | September 20, 2006 – April 7, 2010 | |
| 7 | Lewd act upon a child under 14 | H. | April 8, 2006 – October 16, 2011 | "Master bedroom" |
| 8 | Lewd act upon a child under 14 | H. | April 8, 2006 – October 16, 2011 | "Her bedroom" |
| 9 | Lewd act upon a child under 14 | H. | August 1, 2008 – October 16, 2011 | "While living with Aunt" |
| 10 | Lewd act upon a child under 14 | H. | April 8, 2006 – October 16, 2011 | "Front room/living room |
| 11 | Lewd act upon a child under 14 | H. | January 2009 – May 31, 2011 | "First garage/El Paso" |
| 12 | Lewd act upon a child under 14 | H. | June 1, 2010 – October 16, 2011 | "Second Garage/El Paso" |
| 13 | Possession of child pornography | | June 1, 2009 – October 16, 2011 | |
| 14 | Using a minor to prepare matter depicting sexual conduct | J. & H. | June 1, 2009 – October 16, 2011 | |

The information alleged that counts 2 to 5 and 7 to 12 involved multiple victims. Petitioner was also alleged to have had a prior conviction of a serious felony from 1995—assault with a deadly weapon.

At trial, J. and H. testified that Petitioner engaged in sex acts with them on many occasions, over several years, and in multiple residences. He also took pictures of them when they were undressed.

The jury was shown a set of pornographic photographs that were saved on an SD card in the cellphone found in Petitioner's possession at the time he was arrested. The victims' mother testified that she used her computer to access Petitioner's cell phone account and found photographs showing J. and H. posing nude.

The jury was also shown an interview Petitioner gave to police at the time of his arrest. In the video, he admitted he had sex with J. once when she was 12 and another time when she was 13. He stated he had been "put[ting] his hand on" H. for "a couple of years," but had not had sex with her. He admitted to taking pictures of J. but stated he did so because she asked him to take the pictures. However, at trial, Petitioner testified that he did not commit any of the sex acts J. and H. described and did not take any nude pictures of them. Petitioner claimed he lied to the police officers to protect the victims' mother, because he believed she was responsible for the nude pictures and the pictures were somehow a result of the mother dating other men.

The jury found Petitioner guilty of all charges and found the multiple-victim allegation true. The trial court found the prior conviction allegation true.

The trial court sentenced Petitioner to 660 years to life, as follows: on counts 1 and 6, the sentence for each count was 25 years to life, which was doubled to 50 years to life based on the prior strike. On counts 2 through 5 and 7 through 12, the sentence for each count was 25 years to life, doubled to 50 years to life based on the prior strike. On counts 13 and 14, Petitioner was sentenced to two years, doubled to four. The court also imposed an enhancement of five years on counts 1 through 12 based on the prior offense.

4

## II.     Standard of Review

A person in custody as a result of the judgment of a state court may secure relief through a petition for habeas corpus if the custody violates the Constitution or laws or treaties of the United States.  28 U.S.C. § 2254(a); *Williams v. Taylor*, 529 U.S. 362, 375 (2000).  On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which applies to all petitions for writ of habeas corpus filed thereafter.  *Lindh v. Murphy*, 521 U.S. 320, 322-23 (1997).  Under the statutory terms, the petition in this case is governed by AEDPA's provisions because it was filed April 24, 1996.

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of the merits of a guilty verdict rendered in state court.  *Jackson v. Virginia*, 443 U.S. 307, 332 n. 5 (1979) (Stevens, J., concurring).  Habeas corpus relief is intended to address only "extreme malfunctions" in state criminal justice proceedings.  *Id.*  Under AEDPA, a petitioner can obtain habeas corpus relief only if he can show that the state court's adjudication of his claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d); *Lockyer v. Andrade*, 538 U.S. 63, 70-71 (2003); *Williams*, 529 U.S. at 413.

"By its terms, § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions set forth in §§ 2254(d)(1) and (d)(2)."  *Harrington v. Richter*, 562 U.S. 86, 98 (2011).

As a threshold matter, a federal court must first determine what constitutes "clearly established Federal law, as determined by the Supreme Court of the United States."  *Lockyer*, 538 U.S. at 71.  In doing so, the Court must look to the holdings, as opposed to the dicta, of the

5

Supreme Court's decisions at the time of the relevant state-court decision. *Id.* The court must then consider whether the state court's decision was "contrary to, or involved an unreasonable application of, clearly established Federal law." *Id.* at 72. The state court need not have cited clearly established Supreme Court precedent; it is sufficient that neither the reasoning nor the result of the state court contradicts it. *Early v. Packer*, 537 U.S. 3, 8 (2002). The federal court must apply the presumption that state courts know and follow the law. *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002). The petitioner has the burden of establishing that the decision of the state court is contrary to, or involved an unreasonable application of, United States Supreme Court precedent. *Baylor v. Estelle*, 94 F.3d 1321, 1325 (9th Cir. 1996).

"A federal habeas court may not issue the writ simply because the court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Lockyer*, 538 U.S. at 75-76. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington*, 562 U.S. at 101 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Thus, the AEDPA standard is difficult to satisfy since even a strong case for relief does not demonstrate that the state court's determination was unreasonable. *Harrington*, 562 U.S. at 102.

### III. The State Court Did Not Err in Denying Petitioner's Insufficient Evidence Claims

In his first ground for habeas relief, Petitioner alleges two insufficient evidence claims. First Petitioner maintains there was insufficient evidence to show he had sexual intercourse with J. when she was 10 years old or younger, count 1. (Doc. 10 at 4). Second, Petitioner contends there is insufficient evidence to show that "an act of penetration occurred with 'H' between Sep[tember] 20th 2006 and April 7th 2010," count 6. *Id.* Respondent counters that the Court of Appeal's rejection of Petitioner's claims was reasonable based on the evidence adduced at trial. (Doc. 16 at

6

15-16, 18.)

## A. Standard of Review for Insufficient Evidence Claims

To determine whether the evidence supporting a conviction is so insufficient that it violates the constitutional guarantee of due process of law, a court evaluating a habeas petition must carefully review the record to determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Windham v. Merkle*, 163 F.3d 1092, 1101 (9th Cir. 1998). It must consider the evidence in the light most favorable to the prosecution, assuming that the trier of fact weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in the manner that most supports the verdict. *Jackson*, 443 U.S. at 319; *Jones v. Wood*, 114 F.3d 1002, 1008 (9th Cir. 1997).

## B. Insufficient Evidence – Count 1: Act of Sexual Intercourse

### 1. State Court of Appeal Opinion

Petitioner alleges there is insufficient evidence to prove count 1, sexual intercourse or sodomy with a child 10 years old or younger, occurred. (Doc. 10 at 4.) The state court rejected Petitioner's claim.

> Count 1 alleged that [Petitioner] had sexual intercourse with J. in violation of section 288.7, subdivision (a), between September 20, 2006,[Fn.2] and December 21, 2008. [Petitioner] concedes J. testified that sexual intercourse took place, but he claims the evidence did not show that this happened in the specified time frame and therefore did not prove the victim was 10 years old or younger. He is mistaken.
>
> Fn. 2: This is the date on which section 288.7 became effective. (Stats. 2006), ch. 337, §9.)
>
> J. testified that [Petitioner] touched her vagina, breasts, and behind with his penis and hands on many occasions. The acts began when she was six or seven years old, and continued until 2011. The acts happened when J. was living in Fresno and in Clovis. They took place in a garage, a living room, J.'s bedroom and the parents' bedroom. The acts happened on two or three occasions in a garage, more than 20 occasions in a living room, and more than 20 occasions in J.'s bedroom.

7

According to J.'s testimony, the sec acts included penetration of J.'s vagina by [Petitioner]'s penis. This happened many times when J. went into the bathroom to take a shower. It happened in many of the residences in which the family lived. When asked what was the earliest age when [Petitioner] "put his private within" hers, J. said six or seven, when she was in kindergarten or first grade. In response to a follow-up question whether "it would go on . . . during the whole time," J. said yes.

On cross-examination, J. was asked about an occasion of sexual abuse that took place at her grandmother's ([Petitioner]'s mother's) house in Fresno. She said [Petitioner] penetrated her vagina with his penis on that occasion. She believed this happened in the summer of 2007 when she was nine years old. She was visiting her grandmother's house for only a day or two at the time.

This evidence amply supported the conviction on count 1. J. testified that [Petitioner] had sexual intercourse with her at his mother's house in Fresno in the summer of 2007. This was between the dates set forth in the information. [Petitioner] argues that this is "impossible" because the mother said she was living with the children in Colorado in the summer of 2007 and [Petitioner] was either in San Diego or in jail. The record, however, does not show that what J. testified to was impossible. According to [Petitioner]'s own testimony, he was living in San Diego in 2007, until he came to Fresno in July or early August that year and stayed with his mother. On August 23, 2007, he was arrested and he remained in custody until December 2007. This testimony places [Petitioner] at his mother's house around the same time J. said she was there in the summer of 2007. Further, there is no inconsistency between J.'s testimony and the evidence that J., H. and their mother were living in Colorado at that time. J.'s testimony was that when [Petitioner] raped her in the summer of 2007, she was at [Petitioner]'s mother's house in Fresno for a brief visit, not that she lived in Fresno. It was hardly impossible for the children to visit their grandmother in Fresno during the period when they resided in Colorado.

Further, the evidence would be sufficient even without J.'s testimony about the summer 2007 rape. J. Said the first act of sexual intercourse happened when she was six or seven years old. [Petitioner] told the police he was having intercourse with J. when she was 12 and 13. J. testified that acts of penetration went on "the whole time." J.'s testimony as a whole described a continuous course of sexual abuse spanning this period. From all this evidence, the jury could properly infer that one or more acts of sexual intercourse happened between the dates stated in the information.

In a letter submitted to the court on December 16, 2016, [Petitioner] cited *People v. Rojas* (2015) 237 Cal.App.4th 1298, 188 Cal. Rptr. 3d 811, saying it supports his arguments on count 1 and count 6 because it pertains to "lack of congruity between the charging dates and the evidence at trial." We do not see how this case helps [Petitioner]. In it, the court reversed part of the judgment on ex post facto grounds because the jury was allowed to find the defendant guilty of an offense based on facts occurring more than a year before the statute creating the offense took effect.

(*Id*. at pp. 1306-1307.)  Nothing similar is at issue here.

(Lodged Doc. 22 at 6-8.)

## 2. Denial of Petitioner's Insufficient Evidence of Count 1 Claim Was Not Objectively Unreasonable

Petitioner maintains the evidence presented at trial was insufficient to support his conviction for sexual intercourse or sodomy with a child 10 years old or younger, because the evidence failed to prove he had intercourse with J. before she was 10.  (Doc. 26 at 21.)  Petitioner contends J.'s testimony does not support the charge, because it "was not clear as to when the acts occurred," and although she did testify an act occurred in 2007 at her grandmother's house, it was impossible because Petitioner was in San Diego and later in jail.  *Id.* at 23-24.

The Court must determine whether the evidence adduced at trial is so insufficient "with explicit reference to the substantive elements of the criminal offense as defined by state law." *Jackson*, 443 U.S.  at 324 n. 16.  "We look to California law only to establish the elements of [sexual intercourse or sodomy] and then turn to the federal question of whether the California Court of Appeal was objectively unreasonable in concluding that sufficient evidence supported the" conviction.  *Juan H. v. Allen*, 408 F.3d 1262, 1278 n. 14 (9th Cir. 2005) (citing *Jackson*, 443 U.S. at 324 n. 16)).  "[O]nce the state has spoken as to the required elements [of a crime], the federal issue of sufficiency of evidence remains: Was the evidence sufficient for a rational jury to find each required element beyond a reasonable doubt?"  *Boyer v. Belleque*, 659 F.3d 957, 966 (9th Cir. 2011).

Petitioner was convicted of having sexual intercourse with a child 10 years old or younger.  Pursuant to California Penal Code § 288.7(a) "[a]ny person 18 years of age or older who engages in sexual intercourse or sodomy with a child who is 10 years of age or younger is guilty of a felony and shall be punished by imprisonment in the state prison for a term of 25 years to life."  Petitioner does not dispute that he was over 18 years of age, nor that he engaged in sexual intercourse with J.;

he only disputes that she was 10 years old or younger at the time.

Here, considering the evidence in the light most favorable to the prosecution, the evidence showed beyond a reasonable doubt that J. was 10 years old or younger during the commission of the crime. At trial, J. testified that Petitioner began "molesting" her when she was six or seven years old and continued for six or seven years. (Doc. 17-14 at 11-12.) The earliest time she can recall Petitioner "molesting" her was when she was six or seven and in kindergarten or first grade. *Id*. at 35. J. testified the molestation included Petitioner touching her on her vagina, breasts, and behind with his penis and hands. *Id*. at 13-15. Additionally, Petitioner penetrated J.'s vagina with his penis. *Id*. at 18, 20.

When asked specifically on cross-examination whether she remembered being molested by her father on June 1, 2007 or September 1, 2007, when she was 9 years old, J. responded that she did not know. *Id*. at 45-46. However, she remembered that in the summer of 2007 she was living in Colorado, but she visited her grandmother's house, her father's mother, in Fresno and Petitioner "put his private inside [her] private." *Id*. at 48, 56. Petitioner alleges this event could not have happened, because J. was living in Colorado at the time and he was in San Diego in the summer of 2007, and was arrested and remained in jail from August to December 2007. (Doc. 26 at 23-24.) However, Petitioner testified that he had contact with J. and H. during the summer of 2007. (Doc. 17-15 at 90.) Petitioner also testified that although he was living in San Diego, he would visit Fresno during July and August 2007. *Id*. at 87. The testimony shows that J. was living in Colorado, but visited Fresno in the summer of 2007, where Petitioner was also visiting. Therefore, there is no inconsistency in J.'s testimony.

Petitioner also claims that J.'s testimony that Petitioner molested her was not corroborated by any other witness or any other testimony. (Doc. 26 at 22.) This Court does not reweigh the evidence at trial, but instead must review the record to determine whether a rational trier of fact

could have found that Petitioner "molested" J. before she turned 10 years old. Evidence is considered in the light most favorable to the prosecution, and it is assumed that the jury weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. Accordingly, if the facts support conflicting inferences, the reviewing court "must presume – even if it does not affirmatively appear in the record – that the trier of fact resolved any conflicts in favor of the prosecution, and must defer to that resolution." *Id.* at 326.

Here, the jury was presented with all the evidence, including the contradictory testimony of J. and Petitioner. The jury assessed the credibility of the witnesses and determined J.'s testimony was credible. "[T]he assessment of the credibility of witnesses is generally beyond the scope of review." *Schlup v. Delo*, 513 U.S. 298, 330 (1995). Based on this standard, the Court cannot say it was unreasonable for the Court of Appeal to find there was sufficient evidence to support the claim that Petitioner committed the acts.

The Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law, nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. For these reasons, the Court denies Petitioner's claim that there was insufficient evidence to support the conviction.

## C. Insufficient Evidence: Count 6 – Act of Sexual Intercourse

Petitioner claims the evidence presented at trial was insufficient to support his conviction of having sexual intercourse with H. before she was 10 years old, because H. did not testify that an act of sexual intercourse occurred during the claimed period of time. (Doc. 26 at 30-34.) Specifically, Petitioner claims H. did not testify that Petitioner penetrated her. *Id.*

## 1. **State Court of Appeal Opinion**

Petitioner alleges there was insufficient evidence to support his conviction on count 6, sexual intercourse or sodomy with a child 10 years old or younger. (Doc. 10 at 4.) The state court rejected this argument.

> Count 6 alleged that [Petitioner] had sexual intercourse with H. between September 20, 2006, and April 7, 2010. He claims the evidence failed to show an act of penetration ever took place. If it did take place, he maintains that the evidence did not shown when. He says H.'s testimony was consistent with an act or acts of intercourse, if there were any, taking place only after April 7, 2010, when she was older than 10, so the jury could not reasonably find him guilty. Again, we disagree.

> In her testimony, H. said, "I was raped." She said [Petitioner] raped her repeatedly from when she was 7 to when she was 13 years old. It happened more than 40 or 50 times. It happened in multiple houses, in her bedroom, a living room, a garage, and her parents' bedroom. Sometimes it happened in the afternoon, when others were in the house, and sometimes at night when everyone else was sleeping.

> Ten to 15 of the occasions took place when H. and J. were living with their aunt. They lived at their aunt's house from August 2008 to June 2009.

> When asked what she meant by "raped," H. said, "I don't know how to specifically phrase it," but she went to describe in detail the type of sex act [Petitioner] repeatedly inflicted on her. He took off all of his clothes and all her clothes and touched her breasts, buttocks, and vagina with his hands. Then he made her lie on her back and got on top of her. Next, he rubbed his penis, which she described as hard, on her vagina. Finally, he ejaculated on her stomach. She said this description applied to more than 40 or 50 occasions. When the prosecutor asked her to describe the assaults that happened in each house and each room, she said [Petitioner] did the same things each time.

> H. testified that there were "[a] few times" when the feeling of [Petitioner]'s penis against her vagina was slightly different from the other times. Most of the time, his penis would stay "[o]ut" of her vagina, but on these few occasions she felt more pressure toward the inside. In those instances, she said, "he attempted to go in, but it couldn't, I guess." His penis would slide back farther than usual as he rubbed it on her vagina, and then when he moved it forward again, the tip would press toward the opening. When asked whether [Petitioner]'s penis would "go in some" in these instances, H. said no. On cross-examination, however, H. gave a somewhat different answer. Counsel asked H. if she remembered saying no when an interviewer asked if she ever felt [Petitioner]'s penis inside her. H. replied, "A little bit, but not all the way."

> For purposes of the charged offense, sexual intercourse means "any penetration, no matter how slight of the vagina or genitals by the penis." (*People v. Mendoza*

(2015) 240 Cal.App.4th 72, 79, 191 Cal. Rptr. 3d 905.)  The genitalia include the outer lips and labia majora.  As [Petitioner] concedes, penetration of the vagina thus is not necessary; the crime is proven even if it is shown only that the penis penetrated between the labia majora.  (*People v. Dunn* (2012) 205 Cal.App.4th 1086, 1097-1098, 141 Cal. Rptr. 3d 193.0

We conclude the evidence of penetration during the charged time period was sufficient.  It is true that H. said she felt [Petitioner]'s penis pushing harder than usual toward the opening of her vagina only a few times, and it is true that she was not asked the dates on which or places where those few times happened.  But it would be a mistake to focus the analysis on those few instances, since penetration of the vaginal opening is not required to complete the crime.  H. testified that [Petitioner] routinely rubbed his penis directly on her vagina during the entire period from when she was 7 to when she was 13 – more than 40 to 50 times – including 10 to 15 times during the period from August 2008 to June 2009, which was within the time circumscribed by the information. [Petitioner]'s practice on all these occasions was to remove all their clothes, get on top of her, and rub his erect penis on her vagina until he ejaculated.  It strains credulity to suggest that in the course of all these assaults his penis never once passed between her labia majora, or never until after April 7, 2010.  The jury could properly find otherwise beyond a reasonable doubt.  In light of the record as a whole and the rule that penetration of the labia is sufficient, the fact that H. said [Petitioner]'s penis did not go inside her vagina does not undermine this conclusion.  H. was never asked whether his penis passed between her labia, and the jury could reasonably interpret her testimony to mean only that it never entered the opening of the vagina.

(Lodged Doc. 22 at 8-10, footnote omitted.)

## 2. __Denial of Petitioner's Insufficient Evidence of Count 6 Claim Was Not Objectively Unreasonable__

Petitioner contends the evidence adduced at trial did not support a finding that Petitioner penetrated H., because she failed to provide dates that acts occurred and she did not state that Petitioner penetrated her during any of the acts.  (Doc. 26 at 30.)

At trial, H. testified that Petitioner "raped" her from the age of 7 to 13.  (Doc. 17-14 at 73.) She explained that his penis touched her vagina and described how Petitioner would position himself on top of her while she lay on her back and would rub his penis back and forth against her vagina.  *Id*. at 80.  H. stated that Petitioner tried to penetrate her a few times, and she could "feel pressure" inside of her vagina.  *Id*. at 81.  Petitioner was not able to fully penetrate H., but she felt his penis have contact with the opening of her vagina.  *Id*. at 100.

13

In California, "[s]exual intercourse means any penetration, no matter how slight, of the vagina or genitalia by the penis." *People v. Mendoza*, 240 Cal. App. 4th 72, 79 (2015 (citing *People v. Dunn*, 205 Cal. App. 4th 1086, 1097 (2012)). Therefore, the crime of sexual intercourse with a child does requires penetration of the "labia majora, not the vagina." *Dunn*, 205 Cal. App. 4th at 1097-98

Evidence is considered in the light most favorable to the prosecution, and it is assumed that the jury weighed the evidence, resolved conflicting evidence, and drew reasonable inferences from the facts in a manner that supports the verdict. *Jackson*, 443 U.S. at 319. Here, the evidence was sufficient for a rational jury to find beyond a reasonable doubt that Petitioner penetrated H. pursuant to California law. H. testified that although Petitioner was not able to fully penetrate her, she could feel his penis have contact with the opening of her vagina and felt pressure inside of her vagina. Considering California's definition of sexual intercourse, the evidence was sufficient for a rational jury to find the element of sexual intercourse beyond a reasonable doubt based on H.'s testimony.

Petitioner also claims that H. never testified that he penetrated her when she was 10 years old or younger. (Doc. 26 at 32.) Petitioner alleges "[t]hat the intercourse, as she described, could have happened or occurred after April 7, 2010," when H. turned 11, but not before that date. *Id*.

The prosecution alleged Petitioner had sexual intercourse with H. between September 20, 2006 to April 7, 2010, or between the ages of 7 and 10. H. never specifically stated Petitioner had sexual intercourse with her before she was 10. However, H. testified that Petitioner "raped" her from the time she was 7 to the time she was 13. (Doc. 17-14 at 73.) H. described being "raped" as Petitioner rubbing his penis over her vagina while Petitioner was laying on top of her. *Id*. at 79-80. H. stated Petitioner did this to her "[m]ore than 40 or 50" times. *Id*. at 81. She remembers being "raped" at seven, eight, or nine in a house in Fresno. *Id*. at 82-84. When H. was living at her aunt's house, she remembered Petitioner picking her up at night, bringing her to the front room, and

performing the same acts on her on the couch. *Id*. at 86-91. H. stated this happened approximately 10 to 15 times when she was living at her aunt's house. *Id*. at 92. Although H. did not specifically state Petitioner penetrated her between 2006 and 2010, she described how he performed the same activity of rubbing his penis on her vagina each time. Further, she described these activities started when she was either seven, eight, or nine.

Considering this evidence in the light most favorable to the prosecution, the evidence showed beyond a reasonable doubt that Petitioner engaged in sexual intercourse with H. between 2006, when she was 7 years old, to 2010, when she was 10 years old. Therefore, the Court of Appeal's decision was not an objectively unreasonable application of clearly established federal law nor did it result in a decision that was based on an unreasonable determination of the facts in light of the evidence presented. The Court therefore recommends denying Petitioner's claim that there was insufficient evidence.

**IV.    Petitioner's Prior Strike Claim Is Not Cognizable on Federal Habeas Review**

In his second ground for habeas relief, Petitioner alleges the trial court should have dismissed his prior strike pursuant to California law under *Romero*, *People v. Superior Court (Romero)*, 13 Cal.4th 497 (1996). (Doc. 1 at 37-39.) California courts may dismiss a defendant's prior "strike" conviction for purposes of sentencing under California's Three Strikes Law; these dismissals are referred to as "*Romero*" motions. *Id*. Respondent counters that this claim is a matter of state sentencing law that is beyond the scope of federal habeas relief. (Doc. 24 at 9.)

Petitioners seeking federal habeas relief must allege that they are in custody "pursuant to the judgment of a State court . . . in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). "[F]ederal habeas corpus relief does not lie for errors of state law." *Estelle v. McGuire*, 502 U.S. 62, 67 (1991) (citations omitted). "[E]rrors of state law do not concern us unless they rise to the level of a constitutional violation." *Oxborrow v. Eikenberry*, 877 F.2d

1395, 1400 (9th Cir. 1989).

Here, Petitioner contends the trial court erred in failing to exercise its discretion to strike his prior conviction. Petitioner does not allege a violation of his Constitutional rights, but instead alleges an error in state law. Claims alleging a misapplication of state sentencing laws involve questions of state law that are not cognizable on federal habeas review. *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990). For the forgoing reasons, the undersigned recommends denying this claim.

## V.     Petitioner's Sentence Does Not Violate the Eighth Amendment Prohibition Against Cruel and Unusual Punishment

In his third ground for habeas relief, Petitioner contends that sentencing him to a prison term of 660 years to life is so disproportionate as to constitute cruel and unusual punishment. (Doc. 10 at 6.)

### 1.     State Court of Appeal Opinion

Petitioner contends the imposition of twelve consecutive life terms violates the Eighth Amendment prohibition against cruel and unusual punishment. (Doc. 10 at 5.) The state court rejected Petitioner's claim.

> [Petitioner] argues that his sentence constitutes cruel or unusual punishment under the state and federal constitutions because it is disproportionate to the crimes of which he was convicted. We disagree.
>
> Under the California Constitution, punishment is cruel or unusual, if, although not cruel or unusual in its method, it nevertheless is "so disproportionate to the crime for which it is inflicted that it shocks the conscience and offends the fundamental notions of human dignity." (*In re Lynch* (1972) 8 Cal.3d 410, 424, 105 Cal. Rptr. 217, 503 P.2d 921, fn. omitted.) The cruel-and-unusual clause of the Eight[h] Amendment of the federal Constitution also includes a "'narrow proportionality principle' that 'applies to noncapital sentences.'" (*Ewing v. California* (2003) 538 U.S. 11, 20, 123 S. Ct. 1179, 155 L. Ed. 2d 108.) A determination of whether a punishment is cruel or unusual because of disproportionality may be made based on an examination of the nature of the offense and the offender, "with particular regard for the degree of danger both present to society." (*In re Lynch, supra*, at p. 425; see *People v. Weddle* (1991) 1 Cal.App.4th 1190, 1196, 2 Cal. Rptr. 2d 714.) With respect to the offense, we consider "the totality of the circumstances surrounding the commission of the offense in the case at bar." (*People v. Dillon* (1983) 34 Cal.3d 441, 479, 194 Cal. Rptr. 390, 668 P.2d 697.) With respect to the

16

offender, we consider his "individual culpability as shown by such factors as his age, prior criminality, personal characteristics, and state of mind." (*Ibid.*) A proportionality analysis can also take account of punishments imposed for similar or greater crimes in other cases in California and other jurisdictions. (*People v. Ruiz* (1996) 44 Cal.App.4th 1653, 1661, 52 Cal. Rptr. 2d 561.)

Discussing the nature of the offenses, [Petitioner] says they were not serious enough to make the sentence constitutional because a defendant who commits a first degree murder can receive a sentence of only 25 years to life. On the nature of the offender, [Petitioner] says his individual culpability is not great enough to make the sentence constitutional because his prior criminality was not serious enough and the Static-99R did not find his recidivism risk to be high.

We are not constitutionally compelled to view a single murder as categorically worse than many years of sexual abuse of a defendant's children. This comparison does not show that [Petitioner]'s sentence is grossly disproportionate to the nature of the offenses. As for the nature of the offender, the magnitude of [Petitioner]'s prior criminality by itself may not be great when compared with the severity of the sentence. But when the long-term pattern of sexual abuse demonstrated by the victims' testimony in the current case is taken into account, it is clear that his record of criminality is of the most serious kind. [Petitioner] has not demonstrated cruel or unusual punishment.

(Lodged Doc. 22 at 17-18.)

## 2. **Petitioner's Sentence Does Not Constitute Cruel and Unusual Punishment**

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted." U.S. Const., amend. VIII. Courts determine whether punishment is cruel or unusual by looking beyond historical conceptions to "the evolving standards of decency that mark the progress of a maturing society." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (quoting *Trop v. Dulles*, 356 U.S. 86, 101 (1958)).

Whether a sentence violates the Eighth Amendment's prohibition of cruel and unusual punishment requires the court to determine whether the term is grossly disproportionate to the offense. *Lockyer*, 538 U.S. at 72. What constitutes a grossly disproportionate sentence is unclear. *Id.* "[T]he only relevant clearly established law amenable to the 'contrary to' or 'unreasonable application of' framework is the gross disproportionality principle, the precise contours of which are unclear, applicable only in the 'exceedingly rare' and 'extreme' case." *Id.* at 73. Successful

17

challenges based on disproportionality are "exceedingly rare." *Solem v. Helm*, 463 U.S. 277, 289-90 (1983).

The state court of appeal correctly identified and utilized the appropriate federal law; therefore, this Court is only required to determine whether the state court's decision was "contrary to or involved an unreasonable application of this clearly established gross disproportionality principle." *Lockyer*, 538 U.S. at 73 (internal quotation marks omitted). The court of appeal determined that Petitioner's sentence was not grossly disproportionate after considering the nature of his offense and his prior conviction. The appellate court noted that Petitioner sexually abused his daughter and stepdaughter for "many years." Petitioner also had a prior serious felony conviction for assault with a deadly weapon. The appellate court held that "the magnitude of [Petitioner's] prior criminality by itself may not be great when compared with the severity of his sentence;" however, "when the long-term pattern of sexual abuse demonstrated by the victims' testimony in the current case it taken into account, it is clear that his record of criminality is of the most serious kind." (Lodged Doc. 22 at 18.)

Petitioner challenges the sentence as out of proportion with his crime as "the victims were not physically harmed and did not report permanent psychological damage." (Doc. 26 at 36-37.) The Ninth Circuit's decision in *Norris v. Morgan* is instructive for the case at bar. In *Norris*, the defendant was convicted of one count of child molestation and sentenced to life in prison without the possibility of parole. *Norris v. Morgan*, 622 F.3d 1276, 1281 (9th Cir. 2010). "The factual specifics of Norris's offense involved him touching a five-year-old girl on her 'privates' or 'genitalia' and over her clothing for at most 'a couple of seconds.'" *Id*. at 1293. The Ninth Circuit held that "the question in this case is not whether Norris's most recent first-degree child molestation offense would by itself justify the harsh sentence he received. Because Norris was sentenced as a recidivist under the two strikes law, in weighing the gravity of his offense, we must place on the

scales not only his current felony, but also his criminal history." *Id*. at 1294. (internal quotation marks and citation omitted). The Court concluded that "Norris's sentence is not grossly disproportionate to his crime and so does not violate the Eighth Amendment's prohibition against cruel and unusual punishment," and on that basis upheld the district court's denial of habeas relief. *Id*. at 1296.

Here, Petitioner's conduct was far more egregious than that of the defendant in *Norris*. The jury found Petitioner guilty of 2 counts of sexual intercourse or sodomy with a child 10 years old or younger, 10 counts of lewd acts upon a child under 14, 1 count of possession of child pornography, and 1 count of using a minor to prepare matter depicting sexual conduct. Additionally, Petitioner has a history of committing criminal offenses, including committing a serious felony. As a result, his sentence of 660 years to life does not qualify as one of those "exceedingly rare" or "extreme" cases that would entitle him to federal habeas relief on the basis that it is cruel and unusual.

Accordingly, the undersigned recommends denying Petitioner's claim that his sentence violates the Eighth Amendment prohibition against cruel and unusual punishment.

## VI.    <u>Certificate of Appealability</u>

A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition, but may only appeal in certain circumstances. *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003). The controlling statute in determining whether to issue a certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.

> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal

19

proceedings.

        (c)        (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—

        (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or

        (B) the final order in a proceeding under section 2255.

        (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

        (3) The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that Petitioner is not entitled to federal habeas corpus relief debatable, wrong, or deserving of encouragement to proceed further. Accordingly, the Court recommends declining to issue a certificate of appealability.

**VII.**    <u>**Recommendation and Conclusion**</u>

Based on the foregoing, the undersigned recommends that the Court dismiss the petition for writ of habeas corpus with prejudice, decline to issue a certificate of appealability, and decline to hold an evidentiary hearing.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C □ 636(b)(1).  Within **thirty (30) days** after being served with these Findings and Recommendations, either party may file written objections with the Court.  The document should be captioned □Objections to Magistrate Judge's Findings and Recommendations.  Replies to the objections, if any, shall be served and filed within **fourteen (14) days** after service of the objections.  The parties are advised that failure to file objections within the specified time may constitute waiver of the right to appeal the District Court's order.  *Wilkerson v. Wheeler*, 772 F.3d 834, 839 (9th Cir. 2014) (citing *Baxter v. Sullivan*, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated:   **April 5, 2019**                          _/s/ Sheila K. Oberto_
                                                    UNITED STATES MAGISTRATE JUDGE